MISSOURI & NORTH ARKANSAS RAILWAY COMPANY *v.* POTTS.

Opinion delivered November 12, 1928.

*Shouse & Rowland,* for appellant.

*J. M. Shinn* and *Marvin Hathcoat,* for appellee.

McHANEY, J.  Appellees brought this action to recover from appellant the damage sustained by them on a shipment of cattle to the National Stock Yards, East St. Louis, Ill., by reason of the alleged negligence of the appellant in failing to remove said car of cattle from Everton, Arkansas, to Seligman, Missouri, promptly, in time to make connection with the Frisco, so that said car of cattle should reach the National Stock Yards on the early morning market of Monday, the 2d day of August, 1926, it being alleged that they were not delivered at destination until about 4:30 o'clock A. M. August 3, and that, by reason of the long delay, the cattle had shrunk

in weight, had been down in the car, and were muddy and bruised to such an extent that they suffered $300 damages by reason thereof.

Appellant denied all the allegations of negligence, and says that, even though the cattle were not transported promptly from the point of origin to Seligman, Missouri, they did in fact arrive there in time to make the same Frisco connection they would have made had the train which moved them from the point of origin to Seligman reached Seligman on schedule time.

The case was submitted to the court sitting as a jury, who, in rendering judgment for the appellees for $297.78, made the following findings of fact:

"That when the plaintiffs, L. M. Graham and J. F. Potts, applied for a car on the 29th day of July, 1926, for the following Saturday, July 31, 1926, for a shipment of their cattle to the National Stock Yards at East St. Louis, Illinois, the defendant's station agent at Everton, Arkansas, understood that it was the intention of the defendant to have a car arrive at East St. Louis for the following Monday morning market; that there was an unnecessary delay in getting the shipment to Seligman, Missouri, and but for this delay the shipment should have arrived at East St. Louis several hours earlier, and said stock could have been unloaded and fed and their damage lessened; that, by reason of the unnecessary delay, the plaintiffs were damaged in the sum of $297.78, and that they should have judgment for said amount."

Appellant challenges the above findings to the effect that, when appellees applied for a car on the 29th of July, for the following Saturday, July 31, appellant's agent in Everton understood that it was the intention of appellees to have the car arrive at East St. Louis for the following Monday morning market, and says that there is no evidence in the record to support such finding. Counsel for appellant concede the well-established rule of this court, that it will not reverse upon conflicting evidence submitted either to the jury or to the court sitting as a jury. They say, however, that there is no evidence

upon which to base this finding, and that therefore it should be reversed. We disagree with appellant in this regard. We think there is substantial evidence in the record to support the finding of the court. Mr. Graham testified that they ordered the car on Thursday, July 29, for Saturday, July 31, and that on Friday they went back to Everton and asked the agent what time they had to get the stock in, and the agent told them that they should have them in the pens by nine o'clock. He was asked this question:

"Q. I will ask you if they informed you that if you would load your cattle they would put them on Monday's market at St. Louis? A. They said they would have to have them there by nine o'clock to put them on. Q. What time, when you loaded at nine, or delivered the stock to the pen, what time were they in the habit or custom of putting them into St. Louis? A. Anywhere from seven to eight Monday morning."

He further testified, in substance, that he asked the agent what time he would have to have his stock in the pens to be loaded in order to get them to the St. Louis market Monday morning, and the agent told him nine o'clock Saturday morning. This evidence is disputed by the agent, and there is other substantial evidence in the record sufficient to take the case to the jury, or the court sitting as a jury, as to whether or not the agent invited the shipment for nine o'clock A. M. July 31, 1926, in order to have the cattle reach the National Stock Yards the following Monday morning.

In the case of *C. R. I. & P. Ry. Co. v. Butler*, 132 Ark. 37, 200 S. W. 144, L. R. A. 1918C, 537, this court, quoting the second syllabus, said:

"Where a shipper is invited by a carrier to tender to it his stock for shipment, and the shipper does so pursuant to this invitation, the shipper may presume that the carrier has provided and will furnish the facilities needed, and if, through the lack of facilities, the shipper be compelled to load his cattle into cars prematurely, and they are compelled to stand in the cars

an unnecessarily long time before the cars are put in motion, the shipper may recover damages to compensate the loss sustained thereby.''

It was therefore not a question of whether appellant's train reached Seligman on schedule time, or that they reached the same train on the Frisco they would have reached if appellant's train had arrived on schedule time at Seligman, but it is a question of the appellant's negligence in inviting the shipment at such an hour that it had no facilities to move the cattle promptly to Seligman. Appellees had the right to assume that appellant and the agent invited the shipment for nine o'clock on Saturday, in response to a query from them as to when they must be delivered in the pens to reach the St. Louis market on Monday, that they would thus be transported in time to reach the market, and, if appellant failed to do so, to the damage of appellees, they would be answerable therefor.

We find no error, and the judgment is affirmed.